All right, I welcome you here today. You jumped the gun getting up to the podium a bit. That's okay. It's too late now. I'm just going to ask you to recognize that we have a traffic light system. Yellow light means you have two minutes. When the red light comes on, we ask you to conclude your argument unless you're answering a question from the court. And also, please give us record citations when those are appropriate. This is case number 1711376, United States v. Dixon. Mr. Burgess. Good morning, please, the court. William Burgess on behalf of Jimmy Dixon. Our main disagreement with the government appears to be whether Amendment 599 forbids the seven level firearm enhancements used to sentence Mr. Dixon. So the key is the text of Amendment 599. It's in the addendum to the opening brief starting at the first page, and there are two key passages. The first is the following. If a sentence under this guideline is imposed in conjunction with a sentence for an underlying offense, do not apply any specific offense characteristic for possession, brandishing, use, or discharge of an explosive or firearm when determining the sentence for the underlying offense. And the second key passage is the reason for the amendment at addendum page 2 where it cites the relevant conduct guideline and says that it do not apply any specific offense characteristic. It's not just the crime of violence underlying the 924C conviction, but also any conduct with respect to that offense for which the defendant is accountable. And it cites 1B1.3. Now, the 2000 pre-sentence report explains what the district court did at record page 81, and it specifically does what Amendment 599 says not to do. We know that the robbery and assault counts were relevant conduct to the kidnapping for at least two reasons. One is that counts 1 and 5 are grouped. The pre-sentence investigation report says that count 1, which is the robbery of Ms. Shahan, involves substantially the same harm as count 5, which is the kidnapping, and that's at page 651, paragraph 31. But you and I both know that's nonsense, factually. He robbed her first, then he abducted her and took her away and raped her twice. I suppose I should go to my second reason. So, I mean, to respond to that more specifically, the relevant conduct guideline is very broad. You consider whether it's the same transaction or not, right? It's more than just that. It says all acts or omissions committed, aided, abetted, counseled, commanded, induced, procured or willfully caused by the defendant that occurred during the commission of the offense of conviction in preparation for that offense or in the course of attempting to avoid detection or responsibility for that offense. And that's 1B1.3, subsection A, 1A, and then the paragraph that follows the subsections. I mean, it's very broad, and that is the line that Amendment 599 draws. I mean, the second reason I think might address your question more directly is that the robbery counts were enhanced by four levels, not just for the firearm, but also for the kidnapping. There is a four-level abduction enhancement, and that's at record 652, paragraph 37, and record 653, paragraph 46, and there's a four-level enhancement. If any person was abducted to facilitate the offense or to facilitate escape, enhanced by four levels. So we know, not just from the grouping, but also from this abduction enhancement, that the robberies and the kidnapping were inextricably intertwined, or at least they're close enough in time that they are within the scope of relevant conduct as contemplated by Amendment 599. Let me ask you a question here. Well, I'm going to ask the government about this 28J letter that we received. Did you have any response to that? Sure. So, first of all, I wasn't aware of the existence of this motion until I received the government's letter, but the court can do what it's best with respect to timing. Our preference is that we go forward for, is that this proceed normally for two reasons. One is that Mr. Dixon is in the part of his sentence that's affected by double counting. If we're right, then he's in the part that he shouldn't still be in jail for. His release date is November 4th, 2024, which is in 59 months. He's been in jail for almost 23 years. So we're in the part affected by this. And the other reason is that it is unclear the timeline or the result of this 2255 petition. The government has said some candid things we appreciate in the letter, but the government has also reserved the right to fight that motion on procedural grounds. Well, I'll just ask you to think about this without answering it at the present time, but I'm wondering if you're representing Dixon for purposes of the 2255, and if not, which he filed it pro se, does that amount to some kind of hybrid representation? But as I say, you can move on to your current argument. I just find this situation pretty mystifying. Yeah, just like, not currently, I wasn't aware he was going to file this, and I wasn't aware until I received the government's 28-J letter, I understand the concern. I do not currently represent him in connection with that, as I can say, but to go to the main argument, I suppose, we know that the robbery counts are included within the scope of relevant conduct because of the grouping and also because of the abduction enhancement and, of course, the firearm enhancement, and if that's right, then the pre-sentence report does specifically what Amendment 599 says not to do. It says, do not apply any specific offense characteristic relating to the firearm. Well, of course, you're not really challenging the 2003 PSR, you're challenging the opinion of this Court affirming the sentence.  And precisely saying that 599 was not violated, right? Yes, that is the second hurdle we'd have to overcome as this Court's, Judge DuPont's 2001 decision for this Court, and respectfully, that's wrong for two reasons. The first is that it overlooks Amendment 599's relevant conduct standard when it says that the only potential double counting prohibited is to the kidnapping count, full stop. Amendment 599, I think this comes out most clearly in the reason for amendment, the first paragraph of the Addendum page 2, it says it's not just the crime of violence underlying the 924C conviction, it is also any conduct with respect to that offense for which the defendant is accountable, and it goes on to distinguish between counts of conviction outside the relevant conduct and counts of conviction within the relevant conduct, so it's not just the kidnapping count. And the other error we believe is, which is related, is it overlooks the grouping of counts 1 and 5. It says that, the 2001 decision says that the only count that was enhanced was the robbery, and we think that's just not true because of the way it was calculated. Counts 1 and 5 were grouped, and count 1, and they were both enhanced together, so the only, there's no separate calculation of the kidnapping count in the record, there's just the robbery, and the robbery is enhanced for the kidnapping. If there were to be an independent calculation of the kidnapping count, that still wouldn't get the government off the hook because there is, and we cite this in the brief, there's a part of the kidnapping guideline that says if there was a robbery, enhanced to the level of that other offense. So there's no, there's no escaping that this firearm enhancement was applied to relevant conduct to the kidnapping. Well, that's all very well and good, but law of the case. And our view is that, I mean, we have our argument, we believe it's erroneous, we think it's clearly erroneous because it's a binary question of law. I mean, if the court thinks that the 2001 decision was right, then that's, there's not much we can say about that. Well, we don't have to think it was right, we just think that it binds us as law of the case. I mean, and I'm not speaking for my colleagues, and I'm not speaking for my own personal conclusion, I'm just saying that's the argument. Right. So I just, two things in response to that. This is a pure question of law, it's not a legal question, and to the extent that, I think the difference between wrong and clearly wrong I think has less work to do when this is a legal question. And the other thing I'd say in support of the idea that this is clearly wrong is when the court says clearly the only double-counting prohibited is the kidnapping conviction, that is, that is the view of the Flannery decision from the Eleventh Circuit, that Amendment 599 was specifically enacted to overrule, in our view. Well, 599 said it clarified, didn't it? It did refer to it as a clarification, but it also said that previous courts of appeals took different views on the scope, and that was, that was the reason for the clarification. I don't have the site handy, but we do have— Any suggestion why counsel may not have, and I haven't gone back to the briefs in that previous opinion, but if it was so clearly wrong, counsel could have sought re-hearing. Counsel did seek re-hearing in that case, and the court candidly denied it without calling for a re-hearing. Who was that, the public defender? I can't remember. I've got that. His last name was Kirkendall. I have the briefs at the table. That's okay. I've got it. But yes, there was a re-hearing petition filed in that case, and then, you know, obviously when it went back to the district court, the district court was bound. I mean, nothing allowed is that 599, the ink was barely dry on that. The district court didn't have a chance to address it before it came to this court because Amendment 599 was enacted after the sentencing and before the appeal was briefed. So, I mean, it was in the briefs. The court did confront the issue, and it was raised again in a re-hearing petition, and the court rejected it, and I understand that clearly erroneous is a high hurdle to overcome for law of the case, but, you know, in our view, it's met here. If that is met, we think that if you agree with us that there was double counting, and if you agree that the error side of law of the case, we've surmounted that hurdle, then the prejudice, I think, is much easier. If he's wrongfully in prison every day behind the door is prejudice, according to the cases we've cited, and, you know, the government has this argument that these offenses were so serious and that Judge Kendall expressed such serious concerns that the court should just assume that even if this significant reduction in his guidelines were made, that the judge would re-sentence him to the same amount. I don't think this court has ever so ruled, and I don't think this court should set that precedent. Am I misremembering? Well, actually, we have ruled where it's obvious that a court has made a sentencing error and would issue the same decision on remand, but am I correct that if we eliminated the double counting, he's basically entitled to walk free within a short period of time, or am I misremembering that? I believe so. He has 59 months left on his sentence, and he's been in prison for 23 years, and this would believe this would take, if you take seven levels off his sentence, the top of the guideline range would go from 262 months to 121 months, which we think would take care of the 59 months that are left, so, yeah, we think the answer is yes, and on this record, I don't mean to minimize the concerns that Judge Kendall stated at sentencing, but I think the court would almost certainly enact the same sentence on remand if he were allowed to consider the question. We have guidelines for a reason, and the district court has never considered the proper sentence under the proper calculation. Okay. If the court has further questions, I'm happy to answer them, otherwise, thank you. Thank you. Good morning, and may it please the court, Francesco Valentino on behalf of the United States. Dixon's double-counting claim has evolved over the course of this appeal, but the APSHA does not. This court did not err, and it certainly was not that wrong, as Dixon must show under the law of the case doctrine, when he declined 18 years ago to pretend as if Dixon's robberies were not armed. Well, tell me about the 28J letter, first of all. Yes. We have, in the course of preparing for our argument, we have realized that there is this successive 2255 motion to vacate the 924C conviction that Dixon filed in July after the close of the briefing. We just wanted to inform the court that this motion was pending. Well, the court was basically informed in a footnote in a staff memo about it, but it certainly wasn't highlighted, and I was unaware of it until you filed the letter. And you say that the government is willing to concede that kidnapping is not a violent, not a, what do you call it, a violent felony for purposes of the residual clause of 924C, right? That is generally, that has been the position of the Department of Justice in Limerick. Even if it was kidnapping for purposes of sexual assault, which is, I believe, the way this case was indicted. That's correct. That's the case. This case was indicted. However, Davis does require a categorical approach in the determination of whether a predicate offense is a crime of violence. And under the— So why don't we just roll over and let this man out of prison tomorrow on the grounds that the 120-month sentence is invalid? No, absolutely. That should not be the outcome under any circumstances. We, even if, and again, I don't think there is any ground here to find the defendant eligible, let alone to remand this case on the reduction point, but even if the court were to make that conclusion, the district court could and should, as a matter of discretion, decline any reduction in sentence. In addition, even if the 924C conviction were, for some reason, at the end of the day, vacated in a collateral proceeding, which is not before the court today, even then, the district court would have discretion to unpack the sentence and ensure that the total punishment received by the defendant is adequate and correlative to the violent offenses it committed. So our position is not in any way that the outcome of this proceeding should result in a reduced sentence. How would the court reinstate the original sentence if the 924C is vacated? Under Green Law versus the United States, if the 924C conviction is vacated, but the defendant was sentenced for the 924C alongside other convictions, the court would have discretion and would urge the district court at that point. That would be about a 50% departure, at least. It would be an above-guideline sentence, but we think it's one that, especially under the facts of this case. If I may turn to the issues that are before the court in this case, first, the discourse in Dixon 2 reasonably read the text of Amendment 599 to allow application of the firearm enhancement to the robbery count. Dixon on appeal focuses on one clause, one sentence, really one clause of one sentence in the first paragraph of Amendment 599. But that amendment, that language is not nearly as clear as Dixon would argue in this court. That language is best understood to refer exclusively to the predicate conviction of the 924C. With respect, and in fact, there is in the last sentence of the first paragraph of Amendment 599, the Sentencing Commission provided an example in which there were two separate robbery convictions, one of which was accompanied by 924C, the other one was not, and the Commission said in that case, a firearm enhancement would be appropriate with respect to the first robbery conviction that was not indicted and prosecuted as a 924C. That is the case here, and not only that, to the extent that there's also some suggestion by Dixon, extensive suggestion by Dixon that our interpretation, the government's interpretation of Amendment 599 would nullify the Commission's suggestion that it was intended to supersede the Eleventh Circuit decision in Flannery. But the Commission did address the Flannery decision. It did supersede it in part, but it did so with a scalpel, not with an axe, and it did so in the second paragraph of Amendment 599, which in fact is narrowly tailored to the possession, conviction, possession crimes of the type that were at issue in Flannery, and only prohibited certain firearm enhancement, even in connection with those possession offenses. So for that reason, we don't think there is any basis to believe that this Court was at all incorrect in Dixon II, and certainly was not that wrong, which is a very, very high bar, whatever, contrary to what Dixon suggests. Their argument is, I think, that these are, this is all one ball of wax, so to speak. The entire series of events was one, well, really, I mean, the guy comes into the VA armed and he abducts both of these, or forces both of these people out of the building at the very same time. He shoots the gun, he robs Ms. Cheyenne, he attempts to rob the other fellow, and then he abducts her and carries her off. I mean, it's very hard to segregate those things factually. Right, but this Court, under our interpretation and interpretation of the panel of this Court in Dixon II, does not need to decouple those events and try to consider them as not relevant conduct, because the relevant conduct language that Dixon singularly relies on applies only with respect to enhancement applied to 924C predicates. It does not apply to counts of conviction, which are not the predicates to 924C. As I was just suggesting a minute ago, those are treated separately, and for those separate convictions, only, there's a much more limited prohibition in Amendment 599, which is set in the second paragraph, and it's only for possession convictions and not robbery convictions that involve different conduct, separate conduct, as in this case. As to the factual point that Your Honor just raised, as well, the Dixon II panel could be, the decision in Dixon II could reasonably be understood also to draw a factual distinction, as well as a legal one, which I just argued, between the robbery conviction, the robbery and the kidnapping. As to that, that decision would not be unreasonable, certainly not unreasonable or so dead wrong as to warrant bypassing the law of the case, and a support for that, the Dixon II panel might have relied on the PSR, the response, the Probation Office response to the objections in the PSR, and specifically the language on page 647 of the Record of Appeal that says enhancement, the enhancement, it says that the firing enhancement for the robbery conviction was based on a different transaction than the one on which the 924C was based. So even on that basis, the Dixon II panel could have concluded that, in fact, these events are separate. But again, we don't think that as a matter of law, under Dixon II's correct interpretation of Amendment 599, any of these factual questions should make a difference. There's also one more point that I wanted to touch on, well, two more points, really. One is, not only is Dixon's position contrary to what we think is the plain meaning of 599, what this Court concluded was the plain meaning of 599 in Dixon II, it is also contrary to the purpose of 599, which is really addressed narrowly at double-counting a sentencing. Here, this is a case that was prosecuted under the pre-1998 statute, and the defendant received a 924C conviction that reflected the fact, the type of gun that he used. It wasn't just a regular firearm, it was a short-barrel shotgun that was used as part of this crime spree. The firearm enhancement focused on a different aspect of his conduct. It focused on the fact that the firearm was actually discharged, and that's why he received a full seven-level enhancement sentencing. The last point, which is really a rebuttal point to something that my friend on the other side just said that I wanted to make, has to do with this notion that because the kidnapping count was grouped together with the robbery count, then somehow that is an independent basis to apply, to revisit the sentence. First of all, that's not, that would be a grouping question, which would fall under, which is not within the purview of 3582, which is a limited grant of jurisdiction with respect to a reduction of sentence. And in any event, 599, Amendment 599 is clear that all that happened in this case, all that happened in this case was that the robbery offense in count one was grouped together with the kidnapping offense, and for that reason, the robbery offense drove the offense level for that group, and that in turn became part of the mix that led to the total punishment calculation, which is really sort of the keystone in any guidance calculation. What is striking, in fact, is that if the kidnapping count were considered separately in the different count from the robbery count in count one, the total offense level would have been at least as high as it was in this case, if not higher, if the kidnapping count was considered a distinct unit under the total punishment computation under Section 3D1.3 of the Guidelines. Unless the Court has any further questions about Dixon's arguments and appeal, we would ask that the Court affirm the denial of Dixon's motion for a sentence reduction. I don't think so. Thank you. Mr. Burgess? I'm sure it's just a couple of quick points. One thing is that this is all one ball of wax, and the line that Amendment 599 draws is not separate counts, and this is clearest in the reason for amendment paragraph, addendum page two. It says, no guideline weapon enhancement should be applied when determining the sentence for the crime of conviction or drug trafficking offense underlying the 18 U.S.C. 924C conviction, nor for any conduct with respect to that offense for which the defendant is accountable under Section 1B1.3 relevant conduct. The two instances of for in that sentence refute any contention that it's just the kidnapping count that Amendment 599 applies to. The government mentioned separate bank robberies, and I think this Court's 2001 decision mentioned separate bank robberies. There seems to be a whole bunch of cases about separate bank robberies. I'd turn the Court's attention to pages 646 and 647 of the record, which is the portion of the pre-sentence report, where from 1998, before there was any Amendment 599, where Mr. Dixon raised a similar double-counting argument, but he didn't yet have Amendment 599 to support it. And these separate bank robberies are not — are just unrelated under this relevant conduct guideline. There's the McCarty case from this Court, two different banks robbed two months apart. The McCarthy case from the First Circuit, three bank robberies in three states. And the Mrazik case from the Seventh Circuit, I gather from news reports, the same bankers robbed three different times in different months. Those are not — those are not relevant conduct within 1B1.3, but in this case, the kidnapping and the robbery are relevant conduct, and you can tell because one is enhanced based on the other. The government mentions the purpose and the double-counting and points to the five-level step-up in the statute for the short-barreledness of the shotgun. I would just submit Amendment 599 doesn't slice things that thinly. It says do not apply any enhancement when the criteria are met. Let me ask you, would it have been your contention that these enhancements for double-counting under, I believe, 1B1.3? Yes. Hmm? In other words, before 599 came out, was it — would it not have been the defendant's contention that double-counting was taking place? I think it was Mr. Dixon's contention that double-counting was taking place before, and this was addressed in the pre-sentence investigation report, but 599, I think, made that argument stronger by saying the — So you're saying that if — that the court could — might have been wrong as originally even without 599? I think that's right. He had — But 599 makes a bad wrong for purposes of law of the case? Yes. I don't think I could have said it any better. The last thing I'd like to address, the government said something about how the calculation for the kidnapping would come out. I'm not aware of any basis for that. There's no separate calculation of the kidnapping account in the record, and as I mentioned earlier and as I think we said in our brief, it's unclear how you get the same level or higher level for the kidnapping count without a firearm enhancement. There is a cross-reference in the kidnapping guideline that says if there was a robbery convicted — if there was a robbery committed to facilitate, commission, or escape enhanced to the level of — enhanced to the level of that other offense. I think it's all just one ball of wax, and they're all connected under the 1B1.3 relevant conduct standard. If there are no further questions, I'll thank the court. No, sir, and apparently you were court-appointed, and the court is very grateful for your assistance. Thank you.